**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
ANDREW C. HAMILTON (299877)
*andrew@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:    (619) 798-2006
Facsimile:    (619) 343-2789

**Counsel for Plaintiff**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK BEASLEY, on behalf of himself and all others similarly situated, | Case No: 3:18-cv-7144-MMC |
| Plaintiff, | Pleading Type: Class Action |
| v. | **PLAINTIFF'S MOTION TO REMAND** |
| LUCKY STORES, INC., NESTLE USA, INC., SAVE MART COMPANIES, INC., SAVE MART SUPERMARKETS, and THE KROGER COMPANY, | Judge: The Honorable Maxine M. Chesney
Hearing Date: February 15, 2019
Time: 9:00 a.m.
Location: Courtroom 7 |
| Defendants. | |

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

    **PLEASE TAKE NOTICE** that on February 15, 2019 at 9:00 a.m. in Courtroom 7 of the United States District Court located at 450 Golden Gate Ave., San Francisco, CA 94102, Plaintiff Mark Beasley will, and hereby does, respectfully move the Court for an order remanding this action to San Francisco Superior Court pursuant to 28 U.S.C. § 1447 on the grounds that 28 U.S.C. § 1332(d)(4), the "local controversy" exception, applies to this matter.

DATED: December 21, 2018                      Respectfully Submitted,

                                      /s/ Gregory S. Weston
                                      **THE WESTON FIRM**
                                      GREGORY S. WESTON
                                      ANDREW C. HAMILTON
                                      1405 Morena Blvd., Suite 201
                                      San Diego, CA 92110
                                      Telephone:    (619) 798-2006
                                      Facsimile:    (619) 343-2789

                                      **Counsel for Plaintiff**

# **TABLE OF CONTENTS**

I.     ISSUES PRESENTED................................................................................................1

II.    STATEMENT OF RELEVANT FACTS ...............................................................1

III.   SUMMARY OF ARGUMENT ..............................................................................2

IV.   THE LOCAL CONTROVERSY EXCEPTION APPLIES. ....................................3

      A.     Greater Than Two-thirds of the Class Are Citizens of California, Thus Satisfying Subsection (i)(I). ...............................................................................4

      B.     Plaintiff Alleges Significant Relief from the California Defendants and Thus Satisfies Subsection (i)(II)(aa)...........................................................................5

      C.     The California Defendants' Conduct Forms a Significant Basis for Plaintiff's Claims and Satisfies Subsection (i)(II)(bb)..................................................10

      D.     The Local Defendants Are Citizens of California, Satisfying Subsection (i)(II)(cc). .13

      E.     The Principal Injuries Resulting from the Alleged Conduct Were Incurred in California, Satisfying Subsection (i)(III). ................................................13

      F.     No Other Similar Actions Against Defendants Have Been Filed in the Last Three Years, Satisfying Subsection (ii)................................................................17

V.     THE COURT SHOULD ALLOW PLAINTIFFS LEAVE TO AMEND. ..............17

VI.   CONCLUSION....................................................................................................17

1

**TABLE OF AUTHORITIES**

2

3  # CASES

4

*Aarstad v. BNSF Ry. Co.*,

5      2018 U.S. Dist. LEXIS 176843 (D. Mont. Oct. 15, 2018)..................................6

6

*Bloomquist v. Covance, Inc.*,

7      2017 U.S. Dist. LEXIS 68576 (S.D. Cal. May 3, 2017) .....................................4

8

*Bridewell-Sledge v. Blue Cross*,

9      798 F.3d 923 (9th Cir. 2015) ...........................................................................14

10

*Clay v. Chobani LLC*,

11     2015 U.S. Dist. LEXIS 105433 (S.D. Cal. Aug. 10, 2015) ...............................7

12

*ClubCom, Inc. v. Captive Media, Inc.*,

13     2009 U.S. Dist. LEXIS 7960 (W.D. Pa. Jan. 31, 2009) .....................................9

14

*Coffey v. Freeport McMoran Copper & Gold*,

15     581 F.3d 1240 (10th Cir. 2009) .........................................................................4

16

*Coleman v. Estes Express Lines, Inc.*,

17     631 F.3d 1010 (9th Cir. 2011) ...........................................................................3

18

*Davis v. HSBC Bank Nev., N.A.*,

19     557 F.3d 1026 (9th Cir. 2009) ....................................................................3, 14

20

*Flores v. Chevron Corp.*,

21     2011 U.S. Dist. LEXIS 59884 (C.D. Cal. May 31, 2011)............................6, 11

22

*Grace v. Apple, Inc.*,

23     2018 U.S. Dist. LEXIS 159439 (N.D. Cal. Sep. 18, 2018)...............................10

24

*Hawkins v. Kroger Co.*,

25     906 F.3d 763 (9th Cir. 2018) ............................................................................1

26

*Houze v. Brasscraft Mfg. Co.*,

27     2013 U.S. Dist. LEXIS 199947 (C.D. Cal. Jan. 3, 2013)..................................17

28

*Hoy v. Clinnin*,
   2017 U.S. Dist. LEXIS 96872 (C.D. Cal. Jun 22, 2017) ...................................11

*Loughrin v. Unites States*,
   573 U.S. 351 (2014) ...................................................................................15

*Mass. Mut. Life Ins. Co. v. Superior Court*,
   97 Cal. App. 4th 1282 (2002)...................................................................10

*Meyer v. CUNA Mut. Ins. Soc'y*,
   648 F.3d 154 (3d Cir. 2011) ....................................................................14

*Mireles v. Wells Fargo Bank, N.A.*,
   845 F. Supp. 2d 1034 (C.D. Cal. 2012)...................................................14

*Mullins v. Premier Nutrition Corp.*,
   2016 U.S. Dist. LEXIS 51140 (N.D. Cal. Apr. 15, 2016) ................................10

*Norton v. Ford of Santa Monica*,
   2011 U.S. Dist. LEXIS 47677 (C.D. Cal. Apr. 26, 2011)........................17

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015) ..................................................................16

*Serrano v. 180 Connect, Inc.*,
   478 F.3d 1018 (9th Cir. 2007)..........................................................2, 4, 15

*Simmons v. Ambit Energy Holdings, LLC*,
   2014 U.S. Dist. LEXIS 139016 (S.D.N.Y. Sep. 30, 2014) ................................14

*Smith v. State Farm Mut. Auto. Ins. Co.*,
   93 Cal. App. 4th 700 (2001) ......................................................................9

*Tarrow v. R.J. Reynolds Tobacco Co.*,
   2017 U.S. Dist. LEXIS 183663 (C.D. Cal. Nov. 3, 2017) .....................6, 10, 11

*United States v. Woods*,
   571 U.S. 31 (2014) ...................................................................................15

*Vodenichar v. Halcón Energy Props.*,
   733 F.3d 497 (3d Cir. 2013) ....................................................................14

iv

*Waller v. Hewlett-Packard Co.*,
    2011 U.S. Dist. LEXIS 50408 (S.D. Cal. May 10, 2011) .................................. 16

**STATUTES**

28 U.S.C. § 1332(d)(4)(A)(i)(I) .................................................................... 2

28 U.S.C.S. § 1332(c)(1) ........................................................................... 13

Cal. Bus. & Prof. Code § 17200, *et seq* .................................................... 1

Cal. Bus. & Prof. Code § 17500, *et seq.* ................................................... 1

Cal. Health & Saf. Code  § 110770 .......................................................... 12

Cal. Health & Saf. Code § 110395 ........................................................... 12

Cal. Health & Saf. Code § 110400 ........................................................... 12

Cal. Health & Saf. Code § 110620 ........................................................ 8, 12

Cal. Health & Saf. Code § 110760 ........................................................... 12

I.     **ISSUES PRESENTED**

Is this case a local controversy under CAFA?

II.    **STATEMENT OF RELEVANT FACTS**

The relevant facts do not appear to be in dispute. Plaintiff Mark Beasley is citizen of California and filed his complaint in San Francisco Superior Court on October 26, 2018. *See* Dkt. 1-3, Ex. B. Beasley filed his First Amended Complaint on December 19, 2018. Dkt. 24.

During the Class Period, Coffee-mate contained partially hydrogenated oil, a food additive and the only significant source of artificial trans fat in the American diet. During part of the Class Period, Coffee-mate also had a front-of-label nutrient content claim of "0g Trans Fat." Plaintiff alleges the use of PHO was unlawful because it is an unapproved and unsafe food additive, and using unsafe food additives violates California law. Plaintiff also alleges the manufacture and subsequent retail sale of Coffee-mate was unfair under the UCL's balancing test, because, for its manufacturer there were safe alternatives to PHO during the entire class period, and for the retailers, there were many brands of coffee creamer made without PHO, so the overall utility of the challenged practices are small. However, the harm to consumers was great: when trans fat use was at its greatest in the earlier part of the class period, it resulted in at least fifty thousand excess deaths in the United States each year. Thus, by imposing great harm on California residents, but with little off-setting utility to Defendants, these business practices were unfair.

Finally, Plaintiff brings claims that sound in fraud, alleging the "0g trans fat" label claim is false and misleading. The Ninth Circuit recently held such a claim under California's UCL is not preempted by federal law. *Hawkins v. Kroger Co.*, 906 F.3d 763, 769-72 (9th Cir. 2018).

All causes of action are under California law, specifically the Unfair Competition Law (Bus. & Prof. Code § 17200, *et seq.*), False Advertising Law (Bus. & Prof. Code § 17500, *et seq.*), Consumer Legal Remedies Act (Civ. Code §§ 1750 *et seq.*), and breach of the implied warranty of merchantability. FAC ¶¶ 170-228. Mr. Beasley seeks restitution and damages from all Defendants. *See* FAC at p. 35-36 (Prayer for Relief).

The Class is defined as follows:

1

All citizens of California who purchased in California, on or after January 1, 2010, Coffee-mate products containing partially hydrogenated oil.

Plaintiff also defines the 0g Trans Fat Claim Subclass as follows:

All citizens of California who purchased in California, on or after January 1, 2010, Coffee-mate containing the nutrient content claim "0g Trans Fat" and containing partially hydrogenated oil.

FAC ¶ 149.

Defendant Nestle USA, Inc. ("Nestle") manufactures Coffee-mate but does not ordinarily sell it directly to consumers. FAC ¶¶ 3-4, 12-15. Defendants Lucky Stores, Inc. ("Lucky"), Save Mart Super Markets ("Save Mart"), and Save Mart Companies, Inc. ("SMCI") (collectively the "California Defendants") are California citizens and sell Coffee-mate to consumers at their California grocery stores. FAC ¶¶ 4, 11, 17. Defendant The Kroger Company ("Kroger") is a Delaware corporation with its principal place of business in Ohio and sells Coffee-mate at its California grocery stores. FAC ¶ 18.

Coffee-mate's formulation and labeling were made and approved in California, where Nestle's Coffee-mate division was located during the entire class period. During the entire class period, which ended in 2015 or 2016 when Nestle discontinued the challenged practices, Nestle's principal place of business was in Glendale, California. FAC ¶¶ 1, 12, 14-15. Nestle USA has since moved its headquarters to Arlington, Virginia.

On November 26, 2018, Nestle filed its Notice of Removal. Dkt. 1.

## III.   SUMMARY OF ARGUMENT

Remand is mandatory if all the elements of CAFA's local controversy exception are met. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1022 (9th Cir. 2007).

Here, the Class is explicitly limited to citizens of California, thus satisfying the requirement that two-thirds of the members of the proposed plaintiff classes are citizens of California. 28 U.S.C. § 1332(d)(4)(A)(i)(I).[1]

In addition, Defendants Lucky, Save Mart, and SMCI are citizens of California because they

---

[1] Unless otherwise noted, all citations are to subsections of 28 U.S.C. § 1332(d)(4)(A).

1   are either incorporated or headquartered in California, therefore satisfying Subsection (i)(II)(cc).

2         Analysis of Subsections (i)(II)(aa) and (bb) is limited to the four corners of the complaint,

3   and an opposition to remand may not introduce extrinsic evidence. *Coleman v. Estes Express Lines,*

4   *Inc.*, 631 F.3d 1010, 1015 (9th Cir. 2011). Nothing in the FAC suggests that Plaintiff is not seeking

5   significant restitution and damages from Lucky, Save Mart, and SMCI, and nothing in the FAC

6   suggests that those companies cannot satisfy the requested relief. Rather, the FAC seeks restitution

7   and damages from all Defendants.

8         Similarly, Subsection (i)(II)(bb) is satisfied because California law makes it unlawful to *sell*

9   and *offer for sale* an unsafe and misbranded food. Therefore, Lucky, Save Mart, and SMCI's

10   conduct forms a significant basis for Plaintiff's claims because they sold Coffee-mate directly to

11   consumers, including Plaintiff.

12         The Ninth Circuit reads subsection (i)(III) in the disjunctive to require only that the "the

13   principal injuries **about which the plaintiffs complain** occurred in the state in which the action was

14   originally filed." *Davis v. HSBC Bank Nev., N.A.*, 557 F.3d 1026, 1028 n.2 (9th Cir. 2009) (emphasis

15   added). Here, the class is limited to California citizens who purchased Coffee-mate. Accordingly, the

16   principal injuries about which Plaintiff complains occurred in California.

17         Finally, Nestle itself admits that no similar class actions have been filed against Nestle within

18   the last three years, satisfying Subsection (ii). A similar case was filed more than three years ago, but

19   Nestle cites no authority that this would be relevant.

20         Because all the elements of the local controversy exception are met, the Court lacks

21   jurisdiction over this action, and should, respectfully, remand it to San Francisco Superior Court.

22   **IV.**    **THE LOCAL CONTROVERSY EXCEPTION APPLIES.**

23         CAFA's "local controversy" exception reads as follows:

24   A district court **shall decline** to exercise jurisdiction under paragraph (2)—
  (i) over a class action in which—

25       (I) greater than two-thirds of the members of all proposed plaintiff classes in the

26     aggregate are citizens of the State in which the action was originally filed;
    (II) at least 1 defendant is a defendant—

27         (aa) from whom significant relief is sought by members of the plaintiff class;

28

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

28 U.S.C. § 1332(d)(4)(A) (emphasis added). If these elements are met, a district court "*shall decline*" jurisdiction and must remand the action to state court. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1022 (9th Cir. 2007) (emphasis in original).

In *Coleman v. Estes Express Lines, Inc.*, the Ninth Circuit held "that CAFA's language unambiguously directs the district court to look only to the complaint in deciding whether the criteria set forth in [subsections] (aa) and (bb) are satisfied." 631 F.3d at 1015 (approving of *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1244-45 (10th Cir. 2009) and *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 157 (3d Cir. 2009)). In *Coleman*, the defendants were prohibited from introducing evidence of the size of defendants' bank accounts. 631 F.3d at 1014, 1020; *see also Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1121-22 (9th Cir. 2015)  ("CAFA's use of the words 'sought' and 'alleged' . . . indicates that the district court is to look to the complaint rather than extrinsic evidence . . . Identifying what a plaintiff has alleged requires no clarification: the complaint says what it says."); *Bloomquist v. Covance, Inc.*, 2017 U.S. Dist. LEXIS 68576, at * 7 (S.D. Cal. May 3, 2017) ("In determining whether in-state defendants' alleged conduct forms a 'significant basis' for [plaintiff's] claims, this Court may only look to the allegations of the complaint and may not consider extrinsic evidence."); *Allen v. Boeing Co.*, 821 F.3d 1111, 1117 (9th Cir. 2016).

A.   **Greater Than Two-thirds of the Class Are Citizens of California, Thus Satisfying Subsection (i)(I).**

Subsection (i)(I) is satisfied because the Class and Subclass are limited to "citizens of California." FAC ¶ 149.

---

4

**B.**     **Plaintiff Alleges Significant Relief from the California Defendants and Thus Satisfies Subsection (i)(II)(aa).**

Subsection (i)(II)(aa) is satisfied because there are three local defendants "from whom significant relief is sought by members of the plaintiff class." The FAC plainly seeks relief from local defendants, so the question is whether such relief is "significant." As described above, this determination is made from the face of the complaint only, not extrinsic evidence.

"Significant relief" is not a high bar to meet. It is met even when the local defendant is far less important to the case than the foreign defendant, for instance when the foreign defendant is a huge corporation and the local defendants are merely local operating subsidiaries or individual managers.

In *Coleman*, a class of California truck drivers sought damages against Estes Express, a Virginia corporation, and the Estes West, a California corporation for, *inter alia*, failure to pay overtime. *Coleman*, 631 F.3d at 1012. "Estes argued that Estes West had insufficient funds to satisfy a judgment, and that 'significant relief' therefore had not been 'sought' from it." *Coleman*, 631 F.3d at 1013. Rejecting the defendant's argument, the Ninth Circuit held

> that Coleman's complaint seeks sufficient relief against Estes West to satisfy subsection (aa). The complaint seeks damages equally from Estes West and Estes Express. There is nothing in the complaint to suggest that Estes West is a nominal defendant, or that Estes West has so few assets (including, for instance, buildings and trucks) that Coleman is not seeking significant monetary relief from it.

631 F.3d at 1020.

Similarly, in *Allen v. Boeing Co.*, the class sought relief in Washington state court from Boeing Co., a Delaware citizen, and Landau Associates, Inc., a Washington citizen, for causing groundwater contamination. 821 F.3d 1111, 1113 (9th Cir. 2016). Boeing argued that plaintiffs had not shown "significant relief" because Boeing's liability dwarfed the small local defendant's. *Allen*, 821 F.3d at 1118. The Ninth Circuit held

> Plaintiffs may not know, and perhaps cannot know at this time, how much of their damages is the result of Boeing's actions and how much is the result of Landau's actions or inactions. Nonetheless, the FAC sufficiently alleges that Plaintiffs are seeking

significant relief against Landau, thus satisfying this component of the local controversy exception.

*Allen*, 821 F.3d at 1119.

In *Flores v. Chevron Corp.*, the class action consisted of seven subclasses, each consisting of citizens in California who purchased gas from one of seven defendants. Chevron and Thrifty, two of the defendants, and each with their own subclass, were citizens of California. 2011 U.S. Dist. LEXIS 59884, at *2, *7-8 (C.D. Cal. May 31, 2011). Following *Coleman*, the district court held that the "local controversy" exception applied:

> In reviewing the complaint here, the Court finds that significant relief is sought from the Local Defendants, and their conduct forms a significant basis for the claims asserted. The complaint alleges that the Local Defendants engaged in the exact same violations as non-local Defendants. The complaint seeks damages equally from them and, like the non-local defendants, the Local Defendants are major corporations with a well-recognized presence in California. Nothing in the complaint suggests that they are nominal defendants or that relief from them would be "small change." Thus, Plaintiff has carried his burden of proof with respect to these requirements.

*Flores*, 2011 U.S. Dist. LEXIS 59884, at *11 (citation omitted).

In *Aarstad v. BNSF Ry. Co.*, when the plaintiff sued both BNSF Railroad Company and an individual local defendant, the court found that significant relief was available from the local defendant because "the Court is not permitted to assume that Mr. Swing is indigent and cannot satisfy Plaintiffs' claim of damages." 2018 U.S. Dist. LEXIS 176843, at *8 (D. Mont. Oct. 15, 2018).

In *Tarrow v. R.J. Reynolds Tobacco Co.*, 2017 U.S. Dist. LEXIS 183663, *10 (C.D. Cal. Nov. 3, 2017), plaintiff sought

> both monetary damages and injunctive relief from all five Defendants joint and severally. The alleged California Labor Code violations are pled as being caused by [local individual defendants] Roth and Harrington's creation of policies and practices or their enforcement of [foreign defendants R.J. Reynolds Tobacco Company and Reynolds American, Inc.]'s policies and practices. The damages appear to be the same whether caused by Roth and Harrington, or caused by the other Defendants. As pled, significant damages can be attributed to Roth and Harrington's conduct, therefore Plaintiff has sufficiently alleged that he seeks "significant relief" from local defendants for purposes of the local controversy exception.

1   This case is no different. Plaintiff seeks damages and restitution equally from the three California

2   and two non-California defendants. *See* FAC at p. 35-36 (Prayer for Relief). There is nothing in the

3   FAC to suggest that the California Defendants are nominal defendants or insolvent. Thus, subsection

4   (aa) applies.

5        Defendants' case *Clay v. Chobani LLC*, 2015 U.S. Dist. LEXIS 105433 (S.D. Cal. Aug. 10,

6   2015) applies facts that are not present in this case. Namely, the complaint in that case alleged that

7   Vons and Safeway's revenues from the sale of Chobani's yogurt were "tens of millions" but

8   Chobani's own revenue was "$1 billion." *Clay*, 2015 U.S. Dist. LEXIS 105433 at *16. Here, the

9   FAC makes no such allegations by which the Court could determine whether the local defendants

10  were "small change." Moreover, the Ninth Circuit and plain text of the statute make clear that the

11  question is not whether one defendant has larger coffers than the other, or the relative amount of

12  damages, but whether significant relief is sought. *Allen*, 821 F.3d at 1119.

13       Moreover, the *Clay* discussion of whether the case was a local controversy was also

14  irrelevant dicta, because the Court found an essentially identical class action had been filed in federal

15  court only three months prior, precluding the local controversy exception:

16       most of the Stoltz Complaint is copied verbatim into Plaintiff's Complaint. The Stoltz
         action alleges a violation of the same California laws at issue here. *Stoltz* was filed
17       approximately three months prior to Plaintiff's Complaint.

18  *Clay*, 2015 U.S. Dist. LEXIS 105433, at *17.

19       While coming to the correct result of denying remand on the basis the case was a cut-and-

20  paste copycat of a case filed three months prior, the dicta about significant relief in *Clay* involved a

21  misreading of *Coleman*. *Coleman* discussed a hypothetical defective transmission case against a

22  foreign car company and local auto dealer. *Coleman*, 631 F.3d at 1018. However, a common-law

23  design defect claim would obviously put all or nearly all of the liability on the manufacturer and

24  little to none on the auto dealer, a true nominal defendant. Instead, the claims here are under *strict*

25  *liability statutes* and whose explicit text, in the very same sentence, makes the manufacturer and the

26  direct seller equally liable, and never once distinguishing sellers and manufacturers.

27       *Clay* is further of limited value because it does not mention at all the more recent published

28

7

1  decision of the Ninth Circuit interpreting "significant relief," namely *Benko v. Quality Loan Serv.*

2  *Corp*., 789 F.3d 1111 (9th Cir. 2015). *Benko* was decided less than two months prior to the *Clay*

3  order, and presumably after the motion had already been briefed and submitted. While in this case

4  three of the five defendants are in California, and a fourth defendant was a California citizen during

5  the entire class period, and designed and manufactured the product in California, the case for the

6  local controversy exception was weaker in *Benko*, but still more than sufficient. Specifically, in

7  *Benko*, one of six rather than three of five defendants were local. The remedies sought from the sole

8  local defendant were "substantial" because they claimed "general damages of $10,000 from

9  Meridian, and punitive damages as a result of deceptive trade practices and fraud" summing to

10  "between $5,000,000 and $8,000,000." *Benko v. Quality Loan Serv. Corp*., 789 F.3d 1111, 1119 (9th

11  Cir. 2015).

12      The facts of *Benko* are also instructive as to the difference between a claim based on

13  violation of a particular state statute (*Benko* and this case), and the defective transmission

14  hypothetical discussed in *Coleman*. Selling a car with a defective transmission creates liability for

15  the manufacturer in all 50 states. Here, however, the claims against the retailer defendants *would not*

16  be applicable in other states. First, California's Sherman food law expressly imposes liability on

17  retailers of foods with unapproved or unsafe food additives. *See* Cal. Health & Saf. Code § 110620

18  ("It is unlawful for any person to manufacture, <u>sell</u>, deliver, or <u>offer for sale</u> any food that is

19  adulterated.") (emphasis added).

20      Second, aside from this direct statutory violation, and uniquely against the retailers and not

21  Nestle, Plaintiff claims the retailers violated the Unfair Competition Law for selling a coffee creamer

22  made with trans fat when other leading coffee creamer brands, including International Delight, are

23  not made with trans fat. *See* FAC ¶ 81 ("During the class period, brands of coffee creamer without

24  PHO included International Delight, Nature's First Natural Dairy Creamer, Silk For Coffee Soy

25  Beverage, and Bailey's Coffee Creamer."); FAC ¶ 7 ("During the entire class period, inexpensive

26  and commercially viable alternatives to PHO existed, and indeed were even in use by the primary

27  competitor to Coffee-mate, International Delight. In order to increase profits, Defendants instead

28  sold an unsafe and illegal product, and such behavior was an unfair business practice."); FAC ¶ 128-

8

129 ("Plaintiff's claims for unfair business practices are independent of his claim for false advertising . . . the unlawful sale of Coffee-mate may have had some utility to Defendants in the form of profits, this utility was small and far outweighed by the gravity of the serious health harm they inflicted on consumers."). *See Smith v. State Farm Mut. Auto. Ins. Co*., 93 Cal. App. 4th 700, 718 (2001) ("It is not necessary for a business practice to be 'unlawful' in order to be subject to an action under the unfair competition law. The 'unfair' standard [...] also provides an independent basis for relief. [...] the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.") Plaintiff also argues a related injury to competition, alleging the conduct in the complaint violates the UCL's "unfair prong" because it "injured competing manufacturers and sellers of coffee creamer and dairy cream that do not engage in their unfair behavior." FAC ¶ 130.

Such claims do not implicate a standard or rule that is basically or entirely common to the laws of all states. Instead, in involves the UCL's aggressive rule that business practices, in addition to having to conform with specific statutes, must also not impose harm on consumers out of proportion to a practice's private business benefit. In this, the UCL "differs substantially from the consumer protection statutes and unfair competition laws in every other state." *ClubCom, Inc. v. Captive Media, Inc.*, 2009 U.S. Dist. LEXIS 7960, at *22 (W.D. Pa. Jan. 31, 2009).

This is the same situation, involving conduct that might be legal elsewhere, but is alleged to violate a specific state statute, that led the Ninth Circuit to reverse an order denying remand in *Benko* with instructions to remand. There, the five out-of-state debt collectors in *Benko* also collected debts outside of Nevada. Their debt collection outside of those states conduct that might have been acceptable in those other states. But the question that was a local controversy was that Benko argued the debt collectors violated a specific Nevada law because of their "failure to register as 'collection agencies,' as defined in NRS Section 649.020." *Benko*, 789 F.3d at 1115.

In summary, the UCL's unique "balancing test" that weighs the benefit of a business practice against its harm is like the Nevada statute at issue in *Benko*: it concerns practices that might have occurred in other states, but a unique state law makes it a local controversy as to whether that practice violates the unique state law. *See Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App.

9

4th 1282, 1291 (2002) (noting UCL's "unique scope"); *Grace v. Apple, Inc.*, 2018 U.S. Dist. LEXIS 159439, at *56 (N.D. Cal. Sep. 18, 2018) (The UCL is "materially different from the laws of other states."); *Mullins v. Premier Nutrition Corp.*, 2016 U.S. Dist. LEXIS 51140, at *28 (N.D. Cal. Apr. 15, 2016) ("Indisputably, California's UCL . . . differ[s] from the consumer protection statutes of other states.").

**C.      The California Defendants' Conduct Forms a Significant Basis for Plaintiff's Claims and Satisfies Subsection (i)(II)(bb).**

Subsection (i)(II)(bb) is satisfied because there is a local defendant "whose alleged conduct forms a significant basis for the claims **asserted** by the proposed plaintiff class." (emphasis added). In *Coleman*, "Estes argued that Estes Express had almost complete control over the operations of Estes West, and that Estes West's 'alleged conduct' therefore did not 'form a significant basis for the claims asserted by the proposed plaintiff class.'" 631 F.3d at 1013. The Ninth Circuit rejected this argument as well:

> Coleman's complaint also sufficiently alleges conduct of Estes West that forms a significant basis for the claims asserted on behalf of the class under subsection (bb). The complaint alleges that Estes West employed the putative class members during the relevant period, and that Estes West has violated California law in a number of ways with respect to those employees. The complaint also alleges that Estes Express has violated the same provisions of California law, but the allegations against Estes Express in no way make the allegations against Estes West, the actual employer, insignificant.

*Coleman*, 631 F.3d at 1020.

Similarly, in *Benko*, when only one of six defendants was domiciled in Nevada, the court found that "[t]he one Nevada domiciled Defendant was allegedly responsible for between 15-20% of the wrongs alleged by the entire class. The Plaintiffs have met their burden to show that this case qualifies for the 'local controversy exception.'" 789 F.3d at 1119.

In *Tarrow*, 2017 U.S. Dist. LEXIS 183663, at *11-16, the two local defendants were individual managers working for the out-of-state corporation. The significant basis test was met because "Plaintiff specifically alleges that Roth and Harrington created the policies and practices that gave rise to the alleged violations of the California Labor Code for which Plaintiff seeks relief." *Tarrow*, 2017 U.S. Dist. LEXIS 183663, at *12. The court concluded that

> These policies and practices are precisely the conduct that Plaintiff claims gave rise to the damages he suffered. The fact the Complaint collectively refers to all five Defendants in some of its factual allegations and claims does not mean Plaintiff has not alleged that Roth and Harrington's conduct was a "significant basis" for his claims elsewhere. Plaintiff alleges the violations at issue were the direct result of Roth and Harrington's actions.

*Tarrow*, 2017 U.S. Dist. LEXIS 183663, at *12-13. The same reasoning applies here, but even more so. The actions of the local defendants, *where Plaintiff actually purchased Coffee-mate*, are both the most immediate and also the "but-for" causes of his standing, economic injury, and his entire ability to state a claim against the manufacturer defendant.

In *Hoy v. Clinnin*, the local defendants' conduct met the significant basis requirement when "Plaintiff alleges that Defendants violated the UCL by engaging in the unlawful practice of law in California. It is Linebarger's California attorneys', including Defendant Clinnin, alleged failure to supervise its debt collectors that forms the basis of the unauthorized practice of law." 2017 U.S. Dist. LEXIS 96872, *6 (C.D. Cal. Jun 22, 2017).

In *Flores v. Chevron Corp.*, the class action consisted of seven subclasses, each consisting of citizens of California who purchased gas from one of seven defendants. Chevron and Thrifty, two of the defendants, and each with their own subclass, were residents of California. 2011 U.S. Dist. LEXIS 59884, at *2, *7-8 (C.D. Cal. May 31, 2011) . Following *Coleman*, the district court held that the "local controversy" exception applied:

> In reviewing the complaint here, the Court finds that significant relief is sought from the Local Defendants, and their conduct forms a significant basis for the claims asserted. The complaint alleges that the Local Defendants engaged in the exact same violations as non-local Defendants. The complaint seeks damages equally from them and, like the non-local defendants, the Local Defendants are major corporations with a well-recognized presence in California. Nothing in the complaint suggests that they are nominal defendants or that relief from them would be "small change." Thus, Plaintiff has carried his burden of proof with respect to these requirements.

*Flores*, 2011 U.S. Dist. LEXIS 59884, at *11 (citation omitted). Likewise here, the FAC alleges that the California Defendants violated the same California laws as the foreign Defendants. The FAC seeks damages from both the local and foreign defendants. Thus, nothing in the FAC suggests that the California Defendants are nominal defendants or that relief from them would be "small change."

11

1    Specifically, the FAC alleges that Nestle manufactured the unlawful product but did not sell

2 it directly to consumers. FAC ¶¶ 3-4, 12-15. The FAC also alleges that the California Defendants

3 chose to put the unlawful product on their shelves, even when there were safe alternatives not made

4 with trans fat, and actually sold it to consumers. FAC ¶¶ 4, 11, 17.

5    The FAC describes how the California Defendants' business practices violates at least the

6 following California statutes:

7    • Cal. Health & Saf. Code § 110620, which provides "[i]t is unlawful for any person to

8      **manufacture, sell**, deliver, hold, or **offer for sale** any food that is adulterated." (emphasis

9      added).

10   • Cal. Health & Saf. Code § 110760 ("It is unlawful for any person to **manufacture, sell**,

11     deliver, hold, **or offer for sale** any food that is misbranded." (emphasis added));

12   • Cal. Health & Saf. Code  § 110770 ("It is unlawful for any person **to receive** in commerce

13     any food that is misbranded **or to deliver** or proffer for delivery any such food.") (emphasis

14     added);

15   • Cal. Health & Saf. Code § 110395 ("It is unlawful for any person to **manufacture sell**,

16     deliver, hold, **or offer** for any food that is falsely advertised) (emphasis added); and

17   • Cal. Health & Saf. Code § 110400 ("It is unlawful for any person to **receive in commerce**

18     any food . . . that is falsely advertised **or to deliver or proffer for** delivery any such food…").

19   The Legislature thus could not have been clearer that liability for the sale of dangerous or

20 falsely advertised foods are coequal upon both those who "manufacture" "sell" and "offer for sale"

21 such foods. There is thus no basis to argue these statutes somehow mean only Nestle's

22 "manufacture" but not the California Defendants' "sale" of Coffee-mate was "significant", when

23 both are equally prohibited in the same statute, and indeed in the same sentences of the same statute.

24   In its Notice of Petition for Removal, Nestle argues that the California Defendants' conduct

25 does not form a significant basis for Plaintiff's claims because

26   the California defendants are retailers *who merely sold products* that Nestlé owns,
27   manufactures, distributes, formulates, labels, and markets. . . . The California defendants
     *are not responsible for the labeling* or the ingredient formulation of the Coffee-mate
28

12

products. Accordingly, the retailers' conduct does not form a significant basis for the claims asserted by the proposed class.

Dkt. 1 ¶ 31 (emphasis added). While there might be some cosmic logic in Nestle's argument that its "manufacture" of Coffee-mate but not the retailers "sale" of it as a basis for liability, this is not how the California Legislature wrote the relevant laws.

### D.   The Local Defendants Are Citizens of California, Satisfying Subsection (i)(II)(cc).

Subsection (d)(4)(A)(i)(II)(cc) is satisfied because the California Defendants are California citizens. "For the purposes of this section . . .  a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C.S. § 1332(c)(1). Here, Defendants The Save Mart Companies, Inc. and Save Mart Supermarkets are incorporated in California. FAC ¶17; Request for Judicial Notice Exs. A-C. In addition, Defendant Lucky Stores, Inc. has its principle place of business in Modesto, California. FAC ¶ 11;  RJN Ex. D.

### E.   The Principal Injuries Resulting from the Alleged Conduct Were Incurred in California, Satisfying Subsection (i)(III).

Subsection (i)(III) requires that "principal injuries resulting from the **alleged conduct** or any related conduct of each defendant were incurred in the State in which the action was originally filed." (emphasis added). In *Kaufman*, the Third Circuit held that § 1332(d)(4)(A)(i)(III)

> invokes "the alleged conduct or any related conduct" in the disjunctive. As such, it is satisfied either 1) **when principal injuries resulting from the alleged conduct of each defendant were incurred in the state in which the action was originally filed**, "or" 2) when principal injuries resulting from any related conduct of each defendant were incurred in that state. In the instant case, the alleged conduct comprises the failure to insure or pay for diminished value claims in New Jersey. Plaintiffs are all citizens of New Jersey, the insurance policies were issued in New Jersey, and the putative class would be comprised of members with insurance policies issued in New Jersey. To the extent there are any injuries resulting from the alleged conduct, those injuries were incurred in New Jersey. Hence, the principal injuries provision is satisfied.

*Kaufman*, 561 F.3d at 158 (emphasis added) (holding element fulfilled even when defendant sold similar insurance policies in other states). The Ninth Circuit has adopted this standard. *See Davis v.*

*HSBC Bank Nev., N.A.*, 557 F.3d 1026, 1028 n.2 (9th Cir. 2009) (local controversy exception requires that "the principal injuries **about which the plaintiffs complain** occurred in the state in which the action was originally filed" (emphasis added)); *Benko*, 789 F.3d at 1118 ("The Plaintiffs must also demonstrate that the principal injuries they allege occurred in the state of Nevada, 28 U.S.C. § 1332(d)(4)(A)(i)(III) . . ."); *see also Bridewell-Sledge v. Blue Cross*, 798 F.3d 923, 932 (9th Cir. 2015) (defendant conceded that element was met because "the principal injuries about which plaintiffs complain were **suffered in California**." (original emphasis)). Other circuits have also adopted the *Kaufman* standard. *See Vodenichar v. Halcón Energy Props.*, 733 F.3d 497, 508 n.10 (3d Cir. 2013) (citing *Kaufman*, 561 F.3d at 158); *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 164 n.6 (3d Cir. 2011) (citing *Kaufman*, 561 F.3d at 158).

Following *Kaufman*, the court in *Mireles v. Wells Fargo Bank, N.A.* held that the

> requirement that "principal injuries resulting from the alleged conduct . . . were incurred in the State" in which the action was filed is satisfied, 28 U.S.C. § 1332(d)(4)(A)(i)(III), as all plaintiffs are California citizens who allege injuries resulting from mortgage transactions consummated within the state.

845 F. Supp. 2d 1034, 1056 n.113 (C.D. Cal. 2012). Also following *Kaufman*, the court in *Simmons v. Ambit Energy Holdings, LLC* rejected the argument that the "local controversy exception 'does not apply to cases in which defendants engaged in conduct that could be alleged to have injured persons throughout the country or broadly throughout several states.'" 2014 U.S. Dist. LEXIS 139016, at *12 (S.D.N.Y. Sep. 30, 2014) (citations omitted). Instead, the court held

> Plaintiffs' Second Amended Complaint seeks relief, under *New York* law, for Ambit New York customers who were enrolled in and allegedly deceived by the purported savings of the *New York* Guaranteed Savings Plans and the *New York* Select Variable Plan. [] By definition, every one of those customers received service *in* New York (and nearly every one presumably also lives in New York). It follows that the "principal injuries resulting from the alleged conduct . . . were incurred in" New York.

*Simmons*, 2014 U.S. Dist. LEXIS 139016, at *11 (original emphasis). This was the case even when "[t]he Second Amended Complaint does allege that Defendants have engaged in similar (if not identical) conduct in Illinois." *Simmons*, 2014 U.S. Dist. LEXIS 139016, at *12. In this case, no such allegation about conduct in other states is made in the FAC.

1    In addition, a strict reading of the statute requires remand. The Ninth Circuit mandates and

2    employs a strict reading of CAFA and its exceptions. *Serrano*, 478 F.3d at 1022 ("Our resolution of

3    this issue derives first and foremost from the plain text and structure of the statute."); *Coleman*, 631

4    F.3d at 1017 ("Because we hold that the text is unambiguous, we need not consult the legislative

5    history."); *Benko*, 789 F.3d at 1118 ("When construing the meaning of a statute, we begin with the

6    language of that statute. The Supreme Court has stated that 'a legislature says in a statute what it

7    means and means in a statute what it says there."); *Serrano*, 478 F.3d at 1022 (section 1332(d)(4)

8    "sets out two circumstances that **require** district courts to decline jurisdiction")(original emphasis).

9    Because the language of (i)(III) is disjunctive, it must be read to be satisfied if the principal

10   injuries complained of were incurred in California, **or** if the related conduct occurred in California.

11   For example, in *United States v. Woods*, 571 U.S. 31 (2014), "[a]n IRS regulation provide[d] that

12   when an asset's true value or adjusted basis is zero, '[t]he value or adjusted basis claimed . . . is

13   considered to be 400 percent or more of the correct amount,' so that the resulting valuation

14   misstatement is automatically deemed gross and subject to the 40-percent penalty." The court held

15   that "even if 'value' were limited to factual matters, the statute refers to 'value' **or** 'adjusted basis,'

16   and there is no justification for extending that limitation to the latter term, which plainly incorporates

17   legal inquiries." *Woods*, 571 U.S. at 45 (original emphasis).

18   Moreover, the operative terms are connected by the conjunction "or." While that can
     sometimes introduce an appositive — a word or phrase that is synonymous with what
19   precedes it ("Vienna or Wien," "Batman or the Caped Crusader") — its ordinary use is
     almost always disjunctive, that is, the words it connects are to "be given separate
20   meanings." And, of course, there is no way that "adjusted basis" could be regarded as
     synonymous with "value."
21

22   *Woods*, 571 U.S. at 45-46 (citations omitted); *see also Loughrin v. Unites States*, 573 U.S. 351, 357

23   (2014) ("To read the next clause, following the word 'or,' as somehow repeating that requirement,

24   even while using different words, is to disregard what 'or' customarily means."). Like *Woods* and

25   *Loughrin*, reading Subsection (i)(III) in the conjunctive would render the term "alleged conduct"

26   redundant to the term "related conduct." If Congress had intended Subsection (i)(III) to read in the

27   conjunctive, it would have written "principal injuries resulting from the alleged conduct **and** any

28

1   related conduct of each defendant were incurred in the State in which the action was originally

2   filed." It did not.

3         Pursuant to (d)(4)(A)(i)(III), the "principal injuries resulting from the alleged conduct or any

4   related conduct of each defendant were incurred in" California. *See* FAC ¶ 149 (limiting action to

5   only purchases in California). *See also Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979,

6   986 (9th Cir. 2015) (injury occurs at the time of purchase because "California has created what

7   amounts to a conclusive presumption that when a defendant puts out tainted bait and a person sees it

8   and bites, the defendant has caused an injury." (quotations omitted)). Here, even if there might be

9   similar claims under similar statutes in other states, a question outside the pleadings, the injury

10  **alleged** by Plaintiff—the sale of an unlawful product in violation of California law—occurred

11  entirely and wholly within California. Accordingly, the principal injuries resulting from the alleged

12  conduct of each defendant were incurred in California.

13        In its Notice, Nestle argues that

14        the local controversy exception does not apply when the principal injury alleged is one
15        that occurred throughout the country, not just in the state where the case was filed, as is
          the case here. . . . Coffee-mate is sold nationwide and the labels and ingredient
16        formulation for the Coffeemate products are the same throughout the United States.
          Indeed, in 2015, plaintiff's counsel filed a putative class action alleging the same
17        misbranding theory against the very same product, and brought that case as to a
          nationwide class. *See* Giali Decl. ¶ 5. This demonstrates that this controversy is not truly
18        local in nature, and that the principal injury is nationwide.
19

20  Dkt. 1 ¶ 32. Again, the Ninth Circuit has rejected this argument and instead follows *Kaufman* to

21  recognize that the statute requires only that the principal injuries resulting from the alleged conduct

22  (i.e. the purchase of the product) incurred in the state where the action was originally filed. Nestle's

23  case *Waller v. Hewlett-Packard Co.*, 2011 U.S. Dist. LEXIS 50408, at *15 (S.D. Cal. May 10, 2011)

24  was decided before *Benko or Bridewell-Sledge* applied the *Kaufman* standard. Moreover, Nestle's

25  argument about what other states Coffee-mate is sold in relies on extrinsic evidence, not allegations

26  in the FAC.

27

28

**F.**     **No Other Similar Actions Against Defendants Have been Filed in the Last Three Years, Satisfying Subsection (ii).**

Plaintiff has met the requirement of Subsection (ii) because no other similar actions against either defendant have been filed in the last three years. *See*, *e.g.*, *Norton v. Ford of Santa Monica*, 2011 U.S. Dist. LEXIS 47677, at *9 (C.D. Cal. Apr. 26, 2011) (neither defendant nor plaintiff presented evidence of prior class action filed within prior three years); *Houze v. Brasscraft Mfg. Co.*, 2013 U.S. Dist. LEXIS 199947, at *12-13 (C.D. Cal. Jan. 3, 2013) (requirement met when prior class action against defendant not factually similar).

Nestle argues that

> the local controversy exception does not apply when, in the three years preceding the filing of a case, any other class action has been filed "asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A)(ii). *Backus v. Nestlé USA, Inc.*, No. 3:15-cv-01963 (N.D. Cal.) was first filed on April 30, 2015, **just outside of the three-year requirement**, demonstrating that removal of this case is consistent with the policy behind CAFA and is an example of a type of controversy that is not truly local in nature, and should instead be heard in federal court.

Dkt. 1 ¶ 33 (emphasis added). As Defendants admit, the prior case was filed seven months past the three-year window. There is no policy argument to be had here. If the elements of the exception are met, remand is mandatory. *Serrano*, 478 F.3d at 1022.

**V.     THE COURT SHOULD ALLOW PLAINTIFFS LEAVE TO AMEND.**

"Where a defendant removes a case to federal court under CAFA, and the plaintiffs amend the complaint to explain the nature of the action for purposes of our jurisdictional analysis, we may consider the amended complaint to determine whether remand to the state court is appropriate." *Benko*, 789 F.3d at 1117 (identifying an exception to the rule in *Sparta*). Should the Court require a more detailed explanation of the nature of the action for its jurisdictional analysis, Plaintiff requests leave to amend the FAC under *Benko*.

**VI.     CONCLUSION**

For the foregoing reasons, the federal courts lack jurisdiction over this action involving (1) a California plaintiff; (2) three of five California defendants; (3) California law; (4) a class entirely of

California citizens; and (5) a fourth defendant that was a California citizen during the entirety of the class period. The Court therefore should, respectfully, remand this action.[2]

DATED: December 21, 2018                    Respectfully Submitted,


                                           /s/ Gregory S. Weston
                                           **THE WESTON FIRM**
                                           GREGORY S. WESTON
                                           ANDREW C. HAMILTON
                                           1405 Morena Blvd., Suite 201
                                           San Diego, CA 92110
                                           Telephone:     (619) 798-2006
                                           Facsimile:     (619) 343-2789

                                           **Counsel for Plaintiff**

---

[2] Plaintiff does not seek fees under the remand statute and does not request oral argument.