IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK BEASLEY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>LUCKY STORES, INC., et al.,<br><br>　　　　Defendants. | Case No. 18-cv-07144-MMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**<br><br>Re: Dkt. No. 28 |

Before the Court is plaintiff Mark Beasley's ("Beasley") "Motion to Remand," filed December 21, 2018, whereby Beasley seeks an order remanding the instant action to the Superior Court of California, County of San Francisco. On January 16, 2019, defendants Lucky Stores, Inc. ("Lucky"), Nestlé USA, Inc. ("Nestlé"), Save Mart Super Markets ("Save Mart"), The Kroger Company ("Kroger"), and The Save Mart Companies, Inc. ("SCMI"),[1] filed a joint opposition, to which, on January 30, 2019, Beasley replied.

Having read and considered the papers filed in connection with the motion, the Court rules as follows.[2]

**BACKGROUND**

The instant case is a putative class action lawsuit brought by Beasley, a California citizen, as a purchaser and consumer of Coffee-mate, a line of coffee-creamer products. Beasley alleges that Nestlé, a Delaware corporation with its principal place of business

---

[1] Although defendants, in their opposition, state three of said entities should be treated as one defendant (see Defs.' Opp'n to Pl.'s Mot. to Remand ("Opp'n") at 3 n.4), the Court finds any such distinction has no bearing on the instant analysis.

[2] By order filed February 7, 2019, the Court took the motion under submission.

1  "in California or Virginia" (see First Am. Compl. ("FAC"), filed Dec. 19, 2018, ¶ 12), "manufactures, markets, and sells Coffee-mate" (see id. ¶ 3). He also alleges that Lucky, Save Mart, and SMCI, each of which is a California corporation, and Kroger, a Delaware corporation with its principal place of business in Ohio, "sold Coffee-mate at their grocery stores throughout California" (see id. ¶ 4) and that, during the class period, he purchased Coffee-mate from grocery stores owned by said four defendants.

According to Beasley, Coffee-mate, during the class period, contained partially hydrogenated oil ("PHO"), which is an "[a]rtificial" form of trans fat (see id. ¶ 20) and an "unsafe food additive" (see id. ¶ 3). In addition, Beasley alleges that, for portions of the class period, the packaging for Coffee-mate bore deceptive "nutrient content claim[s]," namely, "0g Trans Fat" and/or "IT'S GOOD TO KNOW: 0g TRANS FAT/serv LACTOSE-FREE GLUTEN-FREE." (See id. ¶ 76; see also id. ¶ 8.)

Based on the above allegations, Beasley, on October 29, 2018, filed his initial complaint in the Superior Court of California, County of San Francisco. In said complaint, Beasley asserted five Causes of Action, brought both individually and on behalf of the following two putative classes: (1) a "Class," defined as "[a]ll citizens of California who purchased in California, on or after January 1, 2010, Coffee-mate products containing [PHO]" (see Class Action Compl., Dkt. No. 1-3 (filed Nov. 26, 2018), ¶ 147); and (2) a "0g Trans Fat Claim Subclass," defined as "[a]ll citizens of California who purchased in California, on or after January 1, 2010, Coffee-mate containing the nutrient content claim '0g Trans Fat' and containing [PHO]" (see id.). The first two Causes of Action were brought on behalf of the "Class" and asserted, respectively, "Unfair Conduct"/"Unlawful Conduct" (see id. at 27:20 & 28:5) under California's "Unfair Competition Law" ("UCL") and "Breach of Implied Warranty of Merchantability" (see id. at 29:4). The last three Causes of Action were "limited to" the "0g Trans Fat Claim Subclass" and asserted, respectively, "Unlawful Conduct"/"Fraudulent Conduct"/"Unfair Conduct" (see id. at 29:25, 32:4, & 32:16) under the UCL, violation of California's "False Advertising Law" (see id. at 33:9), and "Breach of Express Warranty" (see id. at 33:20).

Subsequently, on November 26, 2018, defendants removed the instant case to federal court, on the basis that the Court has jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332, 1453, 1711–15.

On December 19, 2018, Beasley filed the FAC, in which he reasserts the above five Causes of Action and adds, on behalf of the "0g Trans Fat Claim Subclass," a Cause of Action under California's "Consumer Legal Remedies Act." (See FAC at 34:2.) Further, as to all Causes of Action, he asserts jurisdiction is proper in state court because, in addition to Beasley himself, "several defendants" and "all members of the proposed class" are California citizens (see id. ¶ 1), "all claims are asserted under the laws of California" (see id.), and "the decisions about the labeling and formulation of Coffee-mate during the class period were made in and emanated from" California (see id.).

By the instant motion, Beasley seeks an order remanding the above-titled action to state court, on the basis that the "local controversy" exception to CAFA applies. (See Mot. at 2:21.)

**LEGAL STANDARD**

Pursuant to 28 U.S.C. § 1441, removal is proper where the action is one over which federal district courts have original jurisdiction. See 28 U.S.C. § 1441(a). Under CAFA, federal courts are "vest[ed] with original diversity jurisdiction over class actions where (1) the aggregate amount in controversy exceeds $5,000,000; (2) any class member is a citizen of a state different from any defendant; and (3) there are at least 100 class members." See Brinkley v. Monterey Fin. Servs., Inc., 873 F.3d 1118, 1121 (9th Cir. 2017) (citing 28 U.S.C. § 1332(d)(2), (5)(B)).

There are exceptions to CAFA, however, including, as relevant here, the "local controversy" exception, see Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1022 (9th Cir. 2007), which applies to class actions in which:

(i)(I)  greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

|   |   |   |
|---|---|---|
| (i)(II) | at least 1 defendant is a defendant— | |
| | (aa) | from whom significant relief is sought by members of the plaintiff class; |
| | (bb) | whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and |
| | (cc) | who is a citizen of the State in which the action was originally filed; and |
| (i)(III) | principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and | |
| (ii) | during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.] | |

28 U.S.C. § 1332(d)(4)(A).

**DISCUSSION**

As noted, Beasley, relying on the "local controversy" exception, seeks an order remanding the instant action to state court. See Serrano, 478 F.3d at 1022 (holding district court "shall decline to exercise jurisdiction over a class action in which the plaintiff class and at least one defendant meet certain characteristics that essentially make the case a local controversy") (internal quotation, citation, and emphasis omitted). The Court discusses below whether the action was properly removed to federal court and, if so, whether the local controversy exception applies, thereby requiring remand.

**A.   Original Jurisdiction under CAFA**

"[I]t is the proponent's burden to establish a prima facie case of removal jurisdiction." See Serrano, 478 F.3d at 1021. Here, in their Notice of Removal, defendants assert the instant action satisfies CAFA's jurisdictional requirements. In that regard, they allege that: (1) the aggregate amount in controversy exceeds $5 million, as Beasley filed a document in state court asserting that the "amount of restitution . . . exceeds $20 million" (see Not. of Pet. for Removal by Def. Nestlé, filed Nov. 26, 2018, ¶ 26 (citing Decl. of Dale Giali, filed Nov. 26, 2018, Ex. E)); (2) the parties are "minimally diverse," as Beasley is a citizen of California and Nestlé is a citizen of Delaware (see id.

4

1  ¶ 19); and (3) the proposed class exceeds 100 members, as the FAC includes an
2  allegation that such class comprises "thousands of individuals" (see id. ¶ 21 (citing
3  Compl. ¶ 151)).

4  Beasley does not dispute the sufficiency of defendants' showing, and, given the
5  above-referenced allegations, the Court agrees defendants have established a prima
6  facie case of removal jurisdiction under CAFA. See Serrano, 478 F.3d at 1021.

### B. Local Controversy Exception to CAFA

"[T]he party seeking remand bears the burden to prove an exception to CAFA's jurisdiction." See Serrano, 478 F.3d at 1021–22. Defendants contend Beasley has not established all of the requisite elements of the local controversy exception, including the "principal injuries" requirement, see 28 U.S.C. § 1332(d)(4)(A)(i)(III), which, according to defendants, "alone is sufficient grounds to deny [Beasley's] motion." (See Opp'n at 3:8–9.) As discussed below, the Court agrees.

Beasley argues CAFA's "principal injuries" requirement is met because "the injury alleged by [p]laintiff—the sale of an unlawful product in violation of California law—occurred entirely and wholly within California." (See Mot. at 16:9–11 (emphasis in original).) In response, defendants argue, "class actions that challenge conduct that occurred nationwide and, therefore, injures consumers nationwide—like the nationwide sale of Coffee-mate—are not 'local' regardless [of] the presence of a local defendant and a narrowly defined putative class." (See Opp'n at 2:3–5 (emphasis in original).)

As set forth above, subsection (i)(III) requires that "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed." See 28 U.S.C. § 1332(d)(4)(A)(i)(III). CAFA does not, however, define the term "principal injuries," nor does it state whose injuries should be considered or provide other guidance for interpreting subsection (i)(III), and the Court is not aware of any Ninth Circuit precedent addressing the question. See, e.g., Winn v. Mondelez Int'l, Inc., 2018 WL 3151774, at *3 (N.D. Cal. Jun. 28, 2018) (noting "[t]he Ninth Circuit has not spoken directly" as to circumstances under which "principal

5

injuries are incurred in the state where a putative class action is filed"). Although, in some instances, the ordinary meaning of a term may provide guidance, see In re HP Inkjet Printer Litig., 716 F.3d 1173, 1181 (9th Cir. 2013) (holding, "[w]here a statute does not define a key term, we look to the word's ordinary meaning"), here the ordinary meaning of "principal injuries" offers little if any assistance, as, whatever such "ordinary meaning" may be, it does not answer the question of whose injuries are covered.

Consequently, given the absence of adequate guidance from the statutory language or case law, the Court turns to CAFA's legislative history. See id. at 1180–81 (holding, "[w]here the statutory text is ambiguous, . . . we may look to other interpretive tools, including the legislative history[,] in order to determine the statute's best meaning") (internal quotation and citation omitted); see also Kearns v. Ford Motor Co., 2005 WL 3967998, at *12 (C.D. Cal. Nov. 21, 2005) (holding "[b]ecause the term ["principal injuries"] is facially ambiguous and there is no clearly applicable meaning derivable from the case law, it is . . . appropriate to look at the legislative history").

In that regard, defendants point to, and the Court has considered, a report by the Senate Judiciary Committee, which explains the "principal injuries" provision as follows:

> By this criterion, the Committee means that all or almost all of the damage caused by defendants' alleged conduct occurred in the state where the suit was brought. The purpose of this criterion is to ensure that this exception is used only where the impact of the misconduct alleged by the purported class is localized. . . . [I]f the defendants engaged in conduct that could be alleged to have injured consumers throughout the country or broadly throughout several states, the case would not qualify for this exception, even if it were brought only as a single-state class action.

S. Rep. No. 109-14, at *40–41 (2005) (further explaining principal injuries provision "looks at where the principal injuries were suffered by everyone who was affected by the alleged conduct—not just where the proposed class members were injured").

Here, Beasley alleges Coffee-mate "was placed into interstate commerce by [d]efendants and sold throughout the country and throughout California." (See FAC ¶ 189.) He also alleges the PHO in Coffee-mate "cause[s]" a variety of medical conditions in the United States and the world more broadly. (See, e.g., id. at 6:1 &

6

¶¶ 33–43 (alleging "PHO in Coffee-mate caused coronary heart disease"; citing, inter alia, estimates that "removing PHO from the American diet would prevent" approximately 30,000–100,000 premature coronary deaths per year) (internal quotation and citation omitted); id. at 8:10 & ¶¶ 49–54 (alleging PHO in Coffee-mate "caused breast, prostate, and colorectal cancer"; citing studies of groups including "French women" and "American physicians").)[3]

The above-referenced allegations show Coffee-mate was distributed and sold nationwide, not only or even principally in California, and, consequently, that any damage caused by the conduct of one or more of the defendants occurred nationwide. Under such circumstances, defendants' conduct "could be alleged to have injured consumers throughout the country," see S. Rep. 109-14, at *40, and Beasley's limitation of the putative class and subclass to California citizens does not defeat CAFA jurisdiction, see id. at 41 (stating, as to hypothetical class action brought on behalf of citizens of single state against manufacturer and dealers of allegedly defective product sold in all fifty states, "[t]he fact that the suit was brought as a single-state class action does not mean that the principal injuries were local"); see also Phillips v. Kaiser Found. Health Plan, Inc., 953 F. Supp. 2d 1078, 1086 (N.D. Cal. 2011) (holding "CAFA's legislative history shows that Congress did not intend for plaintiffs to defeat federal jurisdiction by filing essentially national or regional class actions limited to plaintiffs from one state").

Beasley's reliance on his inclusion of claims under the UCL, which he asserts "offers consumers protections not available in other states and unique to California" (see Reply at 5:3–4) likewise is unavailing, as Beasley's choice of statute does not alter the fact, whether or not alleged in the FAC, that the harm he attributes to Coffee-mate

---

[3] Given the above allegations, the Court has not considered three documents filed by defendants, namely, a table titled "Recent (2009 to 2019) Trans Fat Cases Filed by Attorney Gregory Westen" (see Opp'n App'x A), a declaration by Daniel Nugent (see Nugent Decl., filed Jan. 16, 2019), and a declaration by Steve Gaines (see Gaines Decl., filed Jan. 16, 2019), and, consequently, the Court does not address herein plaintiffs' objections to their admission.

occurred nationwide.[4]  Moreover, irrespective of whether, in some hypothetical case, the UCL might recognize a claim not available in some other state, the claims Beasley brings here are not limited to the UCL, nor has he shown that any of his claims could not be brought elsewhere.  See, e.g., Waller v. Hewlett-Packard Co., 2011 WL 8601207, at *4 (S.D. Cal. May 10, 2011) (holding, where plaintiff based claims exclusively on UCL and other California statutes but product was "marketed and sold nationwide," local controversy exception inapplicable; finding "there is no reason to believe that the [d]efendants aren't vulnerable to suit on very similar grounds beyond California") (emphasis omitted); see also Phillips, 953 F. Supp. 2d at 1086 (holding local controversy exception inapplicable; noting "[a]lthough [plaintiff] presents the attack through the vehicle of California's consumer protection law," including UCL, "the same theory would support liability under other state[s'] consumer protection laws as well").

Nor is Beasley's reliance on Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144 (3d Cir. 2009), persuasive.  Although, in Kaufman, as here, the defendant pointed to its conduct in states beyond the forum, it did not rely on any argument beyond its assertion that the word "or" in subsection (i)(III) should be read as "and," an argument the Third Circuit rejected, see id. at 158, without addressing the broader issues raised by the instant defendants and discussed herein.

Moreover, contrary to Beasley's contention, the Ninth Circuit has not "adopted [the Kaufman] standard."  (See Mot. at 13:27; Reply at 2:19.)  Indeed, the cases Beasley cites neither mention Kaufman nor address the principal injuries element beyond a passing acknowledgement of its inclusion among the requirements for the local controversy

---

[4] Indeed, counsel for plaintiff previously filed against Nestlé, on behalf of a nationwide class and subclass, a related case based on essentially the same conduct as that alleged in the instant case.  (See First Am. Compl. ¶¶ 1, 150, Backus v. Nestlé USA, Inc., No. 15-1963-MMC (N.D. Cal. Jun. 26, 2015) (alleging federal jurisdiction over action pursuant to CAFA; identifying two nationwide classes, namely, a "PHO Class" of "[a]ll persons who purchased in the United States, on or after January 1, 2006, Coffee-mate products containing [PHO]" and a "0g Trans Fat Claim Subclass" of "[a]ll persons who purchased in the United States, on or after January 1, 2006, Coffee-mate containing the front labeling claim '0g Trans Fat' and containing [PHO]").)

exception. See Kendrick v. Conduent State and Local Sols., Inc., 910 F.3d 1255, 1258, 1260-61 (9th Cir. 2018) (noting, "[t]his is essentially a dispute between those who use the [Golden Gate] [B]ridge to travel between Marin County, California and San Francisco, California, and defendants who are charged with operating the bridge on behalf of the State of California"); Bridewell-Sledge v. Blue Cross of Cal., 798 F.3d 923, 925, 931–32 (9th Cir. 2015) (noting defendants conceded "the principal injuries," specifically, discriminatory pay, "were suffered in California") (emphasis omitted); Benko v. Quality Loan Serv. Corp., 789 F.3d 1111, 1115, 1118 (9th Cir. 2015) (noting defendants conceded "the principal injuries," specifically, illegal debt collection in carrying out foreclosures on mortgaged real property, occurred in forum state); Davis v. HSBC Bank Nev., N.A., 557 F.3d 1026, 1027–28 & 1028 n.2 (9th Cir. 2009) (summarizing elements of local controversy exception; noting "only issue on appeal is whether [defendant] has its principal place of business in the state of California").

Further, a number of district courts within the Ninth Circuit, presented with similar circumstances, in which plaintiffs alleged a single-state class with state-law claims but with respect to products sold nationwide, have concluded the principal injuries requirement was not met. See, e.g., Winn, 2018 WL 3151774, at *4–5 (rejecting plaintiff's reliance on Kaufman; finding principal injuries requirement not met where plaintiff "defined the putative class as consumers in California, while at the same time alleging that the harm—i.e., the selling of Ginger Snaps [containing PHO]—is national in scope"); Kearns, 2005 WL 3967998, at *2, 12 (finding principal injuries requirement not met where pre-owned car program was falsely "marketed nationwide"; finding "any injuries would have been suffered by consumers throughout the country").

Lastly, the Court notes the policies animating CAFA's enactment, as well as the local controversy exception, is consistent with retention of federal jurisdiction over the instant action. See, e.g., Brinkley, 873 F.3d at 1121 (holding "Congress passed CAFA with the 'overall intent . . . to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications'") (ellipses in original) (quoting S. Rep.

9

1  109-14, at *35); see also S. Rep. 109-14, at *39 (explaining local controversy exception "is a narrow exception that was carefully drafted to ensure that it does not become a jurisdictional loophole"; directing federal courts, in assessing exception's criteria, to "bear in mind that the purpose of each of these criteria is to identify a truly local controversy—a controversy that uniquely affects a particular locality to the exclusion of all others").

Accordingly, in light of the foregoing, the Court finds Beasley has failed to show the instant action meets all of the requirements for the local controversy exception, and, consequently, the instant action is not subject to remand. See, e.g., Winn, 2018 WL 3151774, at *5 (finding complaint established "the nature and scope of the alleged wrong" was "not California-specific or otherwise meaningfully local"; denying motion to remand).

**C.     Leave to Amend**

In his motion to remand, Beasley, without providing any explanation as to how he could amend his complaint in order to qualify for the local controversy exception, requests leave to amend.

"[P]laintiffs should be permitted to amend a complaint after removal to clarify issues pertaining to federal jurisdiction under CAFA." See Benko, 789 F.3d at 1117.

Here, as noted, Beasley has already amended his complaint to explain why he does not believe federal jurisdiction exists over the instant action. In particular, following removal, Beasley alleged jurisdiction is proper in state court because he, as well as "several defendants" and "all members of the proposed class," are California citizens (see FAC ¶ 1), "all claims are asserted under the laws of California" (see id.), and "the decisions about the labeling and formulation of Coffee-mate during the class period were made in and emanated from Glendale, California" (see id.). In addition, both his original and amended pleadings allege defendants placed Coffee-mate "into interstate commerce" (see Compl. ¶ 174; FAC ¶ 175) and that Coffee-mate is "sold throughout the country" (see Compl. ¶ 174; FAC ¶ 189). Given such allegations, the Court already has "the information required to determine whether [the instant] suit is within the court's jurisdiction under CAFA." See Benko, 789 F.3d at 1117.

Accordingly, amendment being futile, leave to amend is denied. See Dougherty v. City of Covina, 654 F.3d 892, 901 (9th Cir. 2011) (finding leave to amend would be futile where plaintiff failed to allege facts sufficient to state claim and did not identify any additional facts that could be pled).

**CONCLUSION**

For the reasons stated above, the Motion to Remand is hereby DENIED.

**IT IS SO ORDERED.**

Dated: May 10, 2019

MAXINE M. CHESNEY
United States District Judge