IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARK BEASLEY,
    Plaintiff,
    v.
LUCKY STORES, INC., et al.,
    Defendants.

Case No. 18-cv-07144-MMC

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

Before the Court is defendants' Motion, filed October 25, 2019, to Dismiss Plaintiff's Second Amended Complaint. Plaintiff Mark Beasley ("Beasley") has filed opposition, to which defendants have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

The instant case is a putative class action lawsuit brought by Beasley, a California citizen, as a purchaser and consumer of Coffee-mate, a line of coffee-creamer products. Beasley alleges defendant Nestlé USA, Inc. ("Nestlé") "manufactures, markets, and sells" Coffee-mate. (See Second Am. Compl. ("SAC"), filed October 4, 2019, ¶ 3.) He also alleges that four retailers, namely, defendants Lucky Stores, Inc. ("Lucky"), Save Mart Super Markets ("Save Mart"), Save Mart Companies, Inc. ("SMCI"), and The Kroger Company ("Kroger"), "sold Coffee-mate at their grocery stores throughout California" (see id. ¶ 4) and that, during the class period, he purchased Coffee-mate from grocery stores owned by said retailers.

According to Beasley, all flavors of Coffee-mate, other than the "'Natural Bliss' line" (see id. ¶ 78), contained, during the class period, an "[a]rtificial" form of trans fat (see

---
[1] By order filed November 26, 2019, the Court took the motion under submission.

id. ¶ 18) and "unsafe food additive" (see id. ¶ 3), specifically, partially hydrogenated oil ("PHO"), and during the class period, Coffee-mate's labels bore "unauthorized nutrient content claims" (see id. ¶ 81), namely, "0g Trans Fat" and/or "IT'S GOOD TO KNOW: 0g TRANS FAT/SERV" (see id. ¶ 78; see also id. ¶¶ 6, 81), which language, Beasley alleges, "was part of an intentional, long-term campaign to deceptively market Coffee-mate as healthful and free of trans fat" (see id. ¶ 79).

Based on the above allegations, Beasley, on October 29, 2018, filed his initial complaint in the Superior Court of California, in and for the County of San Francisco.

On November 26, 2018, defendants removed the case to federal court.

On December 19, 2018, Beasley filed his First Amended Complaint ("FAC"), in which he challenged defendants' manufacture and distribution of Coffee-mate, on the basis that (1) it contains PHO ("use claims") and (2) it was falsely labeled with "0g Trans Fat" statements ("labeling claims").

By order filed September 16, 2019, the Court dismissed the use claims with prejudice, finding those claims barred by the doctrine of conflict preemption, and dismissed the labeling claims with leave to amend, finding the allegations in support thereof deficient on a number of grounds.

On October 4, 2019, Beasley filed the SAC, in which he asserts the following four Causes of Action: (1) "Unfair Competition Law [Cal.] Bus. & Prof. Code §§ 17200 et seq.," (2) "California False Advertising Law, [Cal.] Bus. & Prof. Code §§ 17500 et seq.," (3) "Breach of Express Warranty," and (4) "California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq."[2]  Beasley brings these claims both individually and on behalf of the following putative class: "[a]ll citizens of California who purchased in California, between January 1, 2010 and December 31, 2014, Coffee-mate containing the nutrient content claim "0g Trans Fat" and containing partially hydrogenated oil." (See id. ¶ 119.)

---

[2] The First, Second, and Fourth Causes of Action are brought against all defendants; the Third Cause of Action is brought solely against defendant Nestlé.

2

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**DISCUSSION**

By the instant motion, defendants argue that (1) Beasley has failed to adequately allege statutory standing to bring his Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA") claims; (2) each of Beasley's claims is time-barred; and (3) none of Beasley's claims meets the heightened pleading requirements for fraud under Rule 9(b) of the Federal Rules of Civil Procedure.

//

3

**A. Standing: Reliance Element**

In the Court's order dismissing the FAC (hereinafter, "September 16 Order"), the Court found the FAC failed to adequately allege Beasley's reliance on the "0g Trans Fat" label and, consequently, Beasley lacked statutory standing to bring his UCL and FAL claims. By the instant motion, defendants challenge, on that ground, Beasley's statutory standing to bring his UCL and FAL claims, as well as his CLRA claim.

To have standing to pursue a claim under the UCL, FAL, or CLRA, a party must: "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury[;] and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." See Kwikset Corp. v. Sup. Ct., 51 Cal. 4th 310, 322 (2011) (emphasis omitted); Reid v. Johnson & Johnson, 780 F.3d 952, 958 (9th Cir. 2015). With respect to the second element,[3] a plaintiff "proceeding on a claim of misrepresentation . . . must demonstrate actual reliance on the allegedly deceptive or misleading statements." Kwikset Corp., 51 Cal. 4th at 326-27 (internal quotation and citation omitted) (explaining plaintiff "must show that the misrepresentation was an immediate cause of the injury-producing conduct" (internal quotation and citation omitted)).

Here, defendants contend, Beasley has, in their words, alleged "he was not aware that trans fat was harmful . . . until January 2017" (see Mot. at 10:2 (citing SAC ¶¶ 76, 77)), and, consequently, that neither the "amount of trans fat in Coffee-mate" nor the "0g Trans Fat" label could have been "material" to his purchasing decisions (see id. at 10:6-7).

Beasley argues defendants are misreading his allegations. Although, in the cited paragraphs, Beasley alleges he "first discovered [d]efendants' unlawful acts . . . on January 20, 2017, when he learned that Coffee-mate contained an unsafe food additive"

---

[3] Defendants do not contend Beasley failed to allege the first element, economic injury, and the Court finds such element satisfied. (See SAC ¶ 117 (alleging Beasley "suffered loss in an amount equal to the amount he paid for Coffee-mate").)

4

1  (see SAC ¶ 76 (emphasis added)) and that defendants "actively impeded [his] ability to
2  discover the dangerous effects of Coffee-mate" (see id. ¶ 77 (emphasis added)), Beasley
3  explains his intent was to allege his lack of knowledge as to the presence of trans fat in
4  Coffee-mate, not a lack of knowledge as to the harmful effects of trans fat. Construing
5  any arguable ambiguity in the light most favorable to Beasley, the Court finds the cited
6  paragraphs do not preclude a showing of reliance.

Defendants next argue Beasley "does not allege a single fact to plausibly demonstrate that a statement regarding the amount of trans fat [in Coffee-mate] would have impacted his purchasing decision." (See Mot. at 10:14-15.)

In its September 16 Order, the Court found insufficient Beasley's allegation that he "was seeking a product made with safe and lawful ingredients." (See Sept. 16 Order at 21:15-16 (quoting FAC ¶ 140).) In the SAC, Beasley now alleges that "[w]hen purchasing Coffee-mate, [he] sought a product that complied with federal and state law and did not contain harmful ingredients like trans fat" (see SAC ¶ 114), that "Nestle's '0g Trans Fat' claim" was "a substantial factor in his decision to continue purchasing Coffee-mate rather than other coffee creamers" (see id. ¶ 74), and that he "never would have purchased [Coffee-mate] had he known it was misbranded and contained a prominent false statement on the front of its label about its content" (see id. ¶ 116).

The Court finds the above-cited new allegations sufficient to show Beasley sought a product free of trans fat and that his decision to purchase Coffee-mate was made in reliance on the "0g Trans Fat" label. See Hawkins v. Kroger Co., 906 F.3d 763 (2018) (holding plaintiff adequately pleaded reliance where she alleged she "relied on Defendant's '0g trans fat' claim as a substantial factor in her purchases" and purchased the defendant's products "believing they had the qualities she sought based on the Products' deceptive labeling.")

Accordingly, the Court finds Beasley has adequately pleaded statutory standing to bring his claims under the UCL, FAL, and CLRA.

//

**B. Timeliness**

Defendants contend Beasley's claims are time-barred because each accrued outside the applicable limitations period.

Each of Beasley's claims is, depending on the particular statute under which it is brought, subject to either a three-year or four-year limitations period. See Cal. Code Civ. Proc. § 338(a) (providing three-year limitations period for FAL claims); Cal. Civ. Code § 1783 (providing three-year limitations period for CLRA claims); Cal. Bus. & Prof. Code § 17208 (providing four-year limitations period for UCL claims); Cal. Com. Code § 2725(1) (providing four-year limitations period for breach of express warranty claims).

As Beasley filed his initial complaint on October 29, 2018, the limitations period extends back three years, to October 29, 2015, for his FAL and CLRA claims, and four years, to October 29, 2014, for his UCL and breach of warranty claims.

Beasley alleges "[his] best estimate of the last time he purchased Coffee-mate with an unlawful label claim was in early 2014." (See SAC ¶ 72; see also id. ¶ 82 (alleging Coffee-mate products with challenged "0g Trans Fat" label were "on store shelves" until "approximately late 2013 or early 2014").) Although the phrase "early 2014" is somewhat vague, the Court finds the "early" part of 2014 predates October 2014.

Accordingly, absent tolling or delayed accrual, all of Beasley's claims are time-barred. In that regard, Beasley relies on the following three theories.

**1. American Pipe Tolling**

Beasley first contends the running of the applicable statutes of limitations was tolled pursuant to the rule announced in American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974).

In American Pipe, the Supreme Court held "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." Id. at 554. American Pipe tolling "lasts from the day a class claim is asserted until the day the suit is conclusively not a class action." See Falk v. Children's Hosp. Los Angeles, 237

Cal. App. 4th 1454, 1464 (2015). Although the "claims in the first action need not necessarily be identical to the ones in the subsequent action," they must be "substantively similar, based on the same claims and subject matter and similar evidence." Id. at 1466.

Here, Beasley argues, the running of the applicable statutes of limitations was tolled by the commencement of Backus v. Nestle USA, Inc., Case No. 3:15-cv-1963-MMC (N.D. Cal.) (hereinafter, "Backus"), a putative class action brought in federal district court, as Beasley "was a member of the [Backus] class and sues on the same claims." (See Opp'n at 11:23.)[4] In response, defendants contend California law does not recognize cross-jurisdictional tolling, i.e., a situation where, as here, the class action is filed in a jurisdiction other than California.

As all of Beasley's claims are brought under California law, the Court must consider whether the California Supreme Court would recognize cross-jurisdictional tolling. See Centaur Classic Convertible Arbitrage Fund Ltd. V. Countrywide Fin. Corp., 878 F. Supp. 2d 1009, 1015 (C.D. Cal. 2011) ("Federal courts addressing state law claims must apply law state law statutes of limitation and state law applies to the question of tolling state claims."). The Ninth Circuit, noting the California Supreme Court has not adopted cross-jurisdictional tolling, has held:

> [T]he weight of authority and California's interest in managing its own judicial system counsel us not to import the doctrine of cross-jurisdictional tolling into California law. The rule of American Pipe—which allows tolling within the federal court system in federal question class actions—does not mandate cross-jurisdictional tolling as a matter of state procedure.

See Clemens v. Daimler Chrysler Corp., 530 F.3d 852, 860 (9th Cir. 2008) (finding filing

---

[4] Beasley's unopposed request for judicial notice of the initial complaint in and docket report for Backus, as well as the Ninth's Circuit order dismissing Backus's appeal in Backus v. Nestle USA, Inc., Case No. 16-15389 (9th Cir.) is hereby GRANTED. See Minor v. Fedex Office & Print Servs., Inc., 182 F. Supp. 3d 966, 974 (N.D. Cal. 2016) (noting "[p]roper subjects of judicial notice include court documents in the public record and documents filed in other courts" (citing Holder v. Holder, 305 F.3d 854, 866 (9th Cir. 2002)).

7

1  of Illinois class action did not toll statute as to California state law claims subsequently
2  brought in Central District of California); see also Centaur Classic, 878 F. Supp. 2d at
3  1017 (holding "California does not recognize cross-jurisdictional tolling"; declining to toll
4  statute where class action filed in federal district court).

As cross-jurisdictional tolling is not recognized under California law, the Court concludes the filing of the Backus action in the Northern District of California did not toll the statutes of limitations applicable to Beasley's claims.

Accordingly, Beasley is not entitled to American Pipe tolling.[5]

**2. Fraudulent Concealment**

Second, Beasley relies on the doctrine of fraudulent concealment. Under California law, fraudulent concealment tolls the applicable statute of limitations for the period during which the plaintiff does not discover and could not reasonably discover his claim due to "the defendant's fraud in concealing a cause of action against him." See Bernson v. Browning–Ferris Indus. of California, Inc., 7 Cal. 4th 926, 931 (1994) (internal quotation and citation omitted).

The Ninth Circuit has held fraudulent concealment requires "active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed." See Guerrero v. Gates, 442 F.3d 697, 706 (9th Cir. 2006). Similarly, a California Court of Appeal has found fraudulent concealment inapplicable where a defendant "merely" fails to disclose "evidence that the wrong had been committed." See Mark K. v. Roman Catholic Archbishop, 67 Cal. App. 4th 603, 613 (1998) (noting, if courts were to find otherwise, "any time a tortfeasor failed to disclose evidence that would demonstrate its liability in tort, the statute of limitations would be tolled under the doctrine of concealment").

Here, although Beasley alleges Nestlé "actively impeded [his] ability to discover

---

[5] In light of such ruling, the Court does not address herein the issue of whether China Agritech, Inc. v. Resh, 138 S. Ct. 1800 (2018) bars the application of American Pipe tolling to Beasley's class claims.

8

the dangerous effects of Coffee-mate" (see SAC ¶ 77), the only "active imped[ing]" alleged is Nestlé's failure to disclose the alleged false labelling (see id.), which lack of disclosure, as discussed above, is insufficient to support a finding of fraudulent concealment. See Guerrero, 442 F.3d at 706; Mark K., 67 Cal. App. 4th at 613.[6]

Accordingly, the Court finds Beasley is not entitled to tolling under the doctrine of fraudulent concealment.

**3. Delayed Discovery**

Lastly, Beasley argues, he has alleged timely filing under the doctrine of delayed discovery.

Under California law, "to rely on the discovery rule for delayed accrual of a cause of action," the plaintiff "must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 808 (2005) (internal quotation, citation, and emphasis omitted). As to the second element, "[t]he discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." Id. at 807 (explaining, "plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation").

In its September 16 Order, the Court found Beasley had failed to plead the manner of discovery, and further found Beasley's alleged lack of expertise, standing alone, was insufficient to support his assertion that he could not have discovered earlier the facts underlying his claims.

In the SAC, as in the FAC, Beasley alleges he "first discovered" defendants' unlawful conduct "on January 20, 2017." (See FAC ¶ 73; SAC ¶ 76.) He now adds that

---

[6] Sloan v. General Motors LLC, 287 F. Supp. 3d 840 (2018), on which Beasley relies, is distinguishable on its facts. See id. at 888 (finding statute tolled as to implied warranty claims where automobile dealerships told owners their vehicles' excessive oil consumption was "normal").

9

1  he made this discovery "in the course of discussions at his house with his counsel here,
2  who was at the time representing his wife in a class action." (See SAC ¶ 76.)  In light
3  thereof, defendants no longer challenge Beasley's allegations as to the manner of
4  discovery.  Defendants continue, however, to contend Beasley has not adequately
5  alleged his inability to discover his claims earlier.  For the reasons set forth below, the
6  Court disagrees.

First, defendants argue, Beasley should have discovered Coffee-mate contains trans fat because "the presence of PHO was disclosed on the product label in the ingredient statement." (See Mot. at 4:11.)  The SAC, however, contains no allegations as to the ingredient statement.  See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (holding district court, in ruling on Rule 12(b)(6) motion, ordinarily "may not consider any material beyond the pleadings").

Defendants next point to Beasley's allegations that "doctors' associations and other societies worked to publicize findings about PHO." (See Mot. at 4:7-8 (citing SAC ¶ 93).)  Beasley, however, has not alleged he saw or otherwise was made aware of any such publication, and "there is no rule of 'constructive suspicion,' to trigger the statute of limitations simply when the dangers of a product are publicized."  See Unruh-Haxton v. Regents of Univ. of California, 162 Cal. App. 4th 343, 359, 364 (2008), as modified (May 15, 2008) (holding the "statute of limitations does not begin to run when some members of the public have a suspicion of wrongdoing, but only once the plaintiff has a suspicion of wrongdoing" (internal quotation and citation omitted)).

Lastly, Beasley has alleged Nestlé engaged in the challenged "labeling practices" for "many years" (see SAC ¶ 77), that he "has no training" as to "nutrient content claim regulations promulgated by the FDA" (see id. ¶ 107), and that he "reasonably relied on the assumption that Defendants would not manufacture and sell a product with prominent, false, unauthorized, and unlawful statements about its ingredients" (see id.). Read in the light most favorable to Beasley, the Court understands such allegations to set forth a reasonable belief that Nestlé either would not have risked openly violating the

10

1  law for such an extended period of time or would not have been allowed to do so without
2  regulatory repercussions.

Accordingly, the Court finds Beasley has adequately pleaded delayed discovery.

**C. Rule 9(b)**

In its September 16 Order, the Court found the FAC failed to comply with the heightened pleading requirements of Rule 9(b). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (alteration in original; internal quotation and citation omitted). Here, defendants argue, the SAC, like the FAC, fails to state with sufficient specificity (1) when Coffee-mate contained PHO or was labeled with the "0g Trans Fat" claim, (2) when Beasley purchased Coffee-mate, (3) when Beasley relied on the "0g Trans Fat" claim, and (4) where he purchased Coffee-mate. For the reasons set forth below, the Court finds the SAC, although not a model pleading, is "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged." See Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007).

First, the Court finds Beasley has cured the deficiencies the Court previously noted as to when Coffee-mate contained PHO and when it was labeled with the "0g Trans Fat" claim. (Compare SAC ¶ 78 ("Throughout the class period, Coffee-mate, in all of its regular liquid and powder sizes and flavors, [with one exception not relevant to Beasley's claims], was made with PHO yet contained the deceptive nutrient content claim '0g Trans Fat' prominently displayed on the front of the bottle.") with FAC ¶ 76 ("During much of the class period, Coffee-mate was made with PHO yet contained the deceptive health and wellness claim '0g Trans Fat'.").

Second, Beasley has cured the previously noted deficiencies as to when he purchased Coffee-mate. In the September 16 Order, the Court found that, given the nearly nine-year time span of the class period alleged in the FAC, Beasley's allegation

11

that he "repeatedly" purchased Coffee-mate (see FAC ¶ 19) and his allegation that he purchased Coffee-mate "during the class period once per month" (see id. ¶ 71) were too general.  In the SAC, the class period has been shortened (see SAC ¶ 119 (alleging four-year class period beginning January 1, 2010, and ending December 31, 2014)), and, more importantly, the allegations provide greater specificity as to "when" Beasley's purchases were made (see SAC ¶ 82 (alleging Beasley purchased Powdered Coffee-mate "two to four times per year during the entire Class Period"); id. ¶ 83 (alleging Beasley purchased Liquid Coffee-mate "at a rate of one or two bottles per month" from "about 2007 to approximately late 2013")).

Third, Beasley has cured the previously noted deficiencies as to when he relied on the "0g Trans Fat" label.  In the FAC, Beasley alleged he relied on the "0g Trans Fat" label for "some" of his purchases.  (See FAC ¶ 75.)  He now alleges he "first purchased Coffee-mate in packaging bearing the '0g Trans Fat' claim shortly after Nestle began using the claim[,]   . . . believed to be in 2006 or 2007" (see SAC ¶ 75), and that he relied on said label as a "substantial factor in his decision to continue purchasing Coffee-mate rather than other coffee creamers" (see id. ¶ 74).

Fourth, and lastly, Beasley has cured the previously noted deficiencies as to where he made an allegedly actionable purchase of Coffee-mate.  In the FAC, Beasley failed to allege "from which retailer(s) he purchased Coffee-mate in any such instance" (see Order, filed September 16, 2019, at 14:20).  He now alleges one such instance, namely, the occasion on which he "purchased Coffee-mate with an unlawful label claim" in "early 2014" (see SAC ¶ 72) at the "Foods Co located at 345 Williams Ave., San Francisco, CA 94124" (see id. ¶ 71).

In sum, the SAC, read in the light most favorable to Beasley, adequately alleges the "the who, what, when, where, and how of the misconduct charged," see Cafasso, 637 F.3d at 1055, and, accordingly, satisfies the requirements of Rule 9(b).

//

//

**CONCLUSION**

For the reasons stated above, defendants' motion to dismiss the Second Amended Complaint is hereby DENIED.

**IT IS SO ORDERED.**

Dated: January 24, 2020

MAXINE M. CHESNEY
United States District Judge