1

2          IN THE UNITED STATES DISTRICT COURT

3          FOR THE NORTHERN DISTRICT OF CALIFORNIA

4

5   MARK BEASLEY,                          Case No. 18-cv-07144-MMC

6              Plaintiff,

7        v.                               **ORDER DENYING DEFENDANTS'
                                          MOTION FOR SUMMARY JUDGMENT**
8   LUCKY STORES, INC., et al.,

9              Defendants.

10

11          Before the Court is defendants' "Motion for Summary Judgment re: Statute of

12   Limitations," filed March 20, 2020.  Plaintiff Mark Beasley ("Beasley") has filed opposition,

13   to which defendants have replied.  Having read and considered the papers filed in

14   support of and in opposition to the motion, the Court rules as follows.[1]

15                                    **BACKGROUND**

16   **A.  Beasley's Claims**

17          The instant case is a putative class action lawsuit brought by Beasley, a California

18   citizen, as a purchaser and consumer of Coffee-mate, a line of coffee-creamer products.

19   Beasley alleges defendant Nestlé USA, Inc. ("Nestlé") "manufactures, markets, and sells"

20   Coffee-mate (see Second Am. Compl. ("SAC"), filed October 4, 2019, ¶ 3), that four

21   retailers, namely, defendants Lucky Stores, Inc. ("Lucky"), Save Mart Super Markets

22   ("Save Mart"), Save Mart Companies, Inc. ("SMCI"), and The Kroger Company ("Kroger"),

23   "sold Coffee-mate at their grocery stores throughout California" (see id. ¶ 4), and that,

24   during the class period, he purchased Coffee-mate from grocery stores owned by said

25   retailers.

26          According to Beasley, all flavors of Coffee-mate, other than the "'Natural Bliss'

27   _____

28          [1] On April 17, 2020, the Court took the motion under submission.

United States District Court
Northern District of California

1    line" (see id. ¶ 78), contained, during the class period, an "[a]rtificial" form of trans fat (see

2    id. ¶ 18), specifically, partially hydrogenated oil ("PHO"), and that, during the class period,

3    Coffee-mate's labels bore "unauthorized nutrient content claims" (see id. ¶ 81), namely,

4    "0g Trans Fat" and/or "IT'S GOOD TO KNOW: 0g TRANS FAT/SERV" (see id. ¶ 78; see

5    also id. ¶¶ 6, 81), which language, Beasley alleges, "was part of an intentional, long-term

6    campaign to deceptively market Coffee-mate as healthful and free of trans fat" (see id.

7    ¶ 79).

8           Based on the above allegations, Beasley asserts the following four Causes of

9    Action: (1) "Unfair Competition Law [Cal.] Bus. & Prof. Code §§ 17200 et seq.," (2)

10   "California False Advertising Law, [Cal.] Bus. & Prof. Code §§ 17500 et seq.," (3) "Breach

11   of Express Warranty," and (4) "California Consumer Legal Remedies Act, Cal. Civ. Code

12   §§ 1750 et seq."[2]  Beasley brings these claims both individually and on behalf of the

13   following putative class: "[a]ll citizens of California who purchased in California, between

14   January 1, 2010 and December 31, 2014, Coffee-mate containing the nutrient content

15   claim '0g Trans Fat' and containing partially hydrogenated oil."  (See id. ¶ 119.)

16   **B.  Relevant Procedural History**

17          At the initial case management conference, held January 31, 2020, the Court

18   granted defendants leave to file a motion for summary judgment on the limited issue of

19   whether Beasley's claims are time-barred, set a briefing and discovery schedule thereon,

20   and denied Beasley's request to file a cross-motion for summary judgment as to whether

21   "0g Trans Fat" is an unlawful nutrient content claim.

22          On March 10, 2020, counsel for defendants deposed Beasley, and, shortly

23   thereafter, defendants filed the instant motion.  In support of his opposition to defendants'

24   motion, Beasley filed, inter alia, deposition errata pursuant to Rule 30(e) of the Federal

25   Rules of Civil Procedure, whereby he made five changes to his deposition testimony, one

26

27          [2] The First, Second, and Fourth Causes of Action are brought against all
28   defendants; the Third Cause of Action is brought solely against defendant Nestlé.

United States District Court
Northern District of California

1   of which changed his answer to a question pertaining to when he first knew PHO "is the

2   ingredient that is the source of artificial trans fat." (See Doc. 77-1 at 8:12-13.)  In

3   particular, he changed his answer from "I guess maybe in the late 1990s" (see id. at 8:16-

4   17) to "I've known trans fat was bad since I'd guess in the late 1990s, and I learned that

5   trans fat came from PHO in 2017" (see Doc. 78-1 at 60).  In addition, Beasley filed a

6   declaration, executed on April 3, 2020, in which he states he "did not know that partially

7   hydrogenated oil was the source of artificial trans fat in food until 2017, or otherwise

8   understand the connection between partially hydrogenated oil and trans fat." (See Doc.

9   78-2 at 2:16-18.)

10                                          **LEGAL STANDARD**

11          Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant

12   summary judgment if the movant shows that there is no genuine issue as to any material

13   fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P.

14   56(a).

15          The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317

16   (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric

17   Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking

18   summary judgment show the absence of a genuine issue of material fact.  Once the

19   moving party has done so, the nonmoving party must "go beyond the pleadings and by

20   [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on

21   file, designate specific facts showing that there is a genuine issue for trial." See Celotex,

22   477 U.S. at 324 (internal quotation and citation omitted).  "When the moving party has

23   carried its burden under Rule 56[ ], its opponent must do more than simply show that

24   there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

25   "If the [opposing party's] evidence is merely colorable, or is not significantly probative,

26   summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations

27   omitted).  "[I]nferences to be drawn from the underlying facts," however, "must be viewed

28   in the light most favorable to the party opposing the motion." See Matsushita, 475 U.S. at

1   587 (internal quotation and citation omitted).

2                                  **DISCUSSION**

3          On October 29, 2018, Beasley filed his initial complaint.  By the instant motion,

4   defendants argue Beasley's claims are barred by the applicable statutes of limitation, the

5   longest of which is four years, and that, although Beasley declares he "first learned that

6   Coffee-mate contained trans fat . . . in 2017 during a discussion with [his] attorney" (see

7   Doc. 78-2 at 1:4-5), he is not entitled to delayed accrual of his claims.

8          Under California law, the "discovery rule . . . postpones accrual of a cause of

9   action until the plaintiff discovers, or has reason to discover, the cause of action."  See

10  Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 807 (2005) (internal quotation,

11  citation, and emphasis omitted).  "When a plaintiff reasonably should have discovered

12  facts for purposes of the accrual of a cause of action," however, "is generally a question

13  of fact, properly decided as a matter of law only if the evidence . . . can support only one

14  reasonable conclusion."  See Rosas v. BASF Corp., 236 Cal. App. 4th 1378, 1394 (Cal.

15  App. 2015) (internal quotation, citation, and alterations omitted).  A plaintiff has reason to

16  discover a cause of action "when he at least suspects a factual basis, as opposed to a

17  legal theory, for its elements, even if he lacks knowledge thereof," i.e., when "he at least

18  suspects that someone has done something wrong to him."  See id. at 1389 (internal

19  quotations, citations, and alteration omitted).  The discovery rule thus "only delays

20  accrual until the plaintiff has, or should have, inquiry notice of the cause of action."  See

21  Fox, 35 Cal. 4th at 807 (explaining, "plaintiffs are required to conduct a reasonable

22  investigation after becoming aware of an injury, and are charged with knowledge of the

23  information that would have been revealed by such an investigation").

24         Here, defendants first note it is undisputed that at all relevant times the ingredient

25  list on Coffee-mate products listed "partially hydrogenated" oil as an ingredient.  (See,

26  e.g., Doc. 77-2 at Ex. 3.)  Defendants then argue Beasley is not entitled to delayed

27  accrual because, at his deposition, he admitted (1) he has known since the "late 1990s"

28  (see Doc. 77-1 at 8:17) that PHO "is the ingredient that is the source of artificial trans fat"

United States District Court
Northern District of California

1    (see id. at 8:12-13, 17), (2) he has been aware for "at least ten years," i.e., since 2010,

2    that packaged foods contain an ingredient list (see id. at 18:10), (3) during the class

3    period, 2010-2014, he sought to avoid consuming trans fat, and (4) he knows consumers

4    seeking to avoid trans fat can look at a food product's ingredient list to see if it contains

5    PHO.  According to defendants, Beasley "is held to behave as he would expect another

6    consumer to behave, *i.e.*, review the ingredient list on the back of the Coffee-mate

7    products he purchased, which declared the presence of PHO" (see Mot. at 10:23-25) and

8    thus "was at least on inquiry notice, if not actual notice, during the class period of the

9    factual basis for his claims" (see id. at 9:17-18).

10          In response, Beasley contends he "misspoke at his deposition" (see Opp'n at 7:1)

11    when he said he has known since the late 1990s that PHO is the source of trans fat and

12    that the Court should credit his deposition errata and declaration, wherein he stated that,

13    until 2017, he did not know PHO is the source of artificial trans fat.  As defendants point

14    out, the timing of such later statements, i.e., after defendants' motion for summary

15    judgment was filed, is suspect, as is the direct contradiction between those statements

16    and the deposition testimony on which defendants' summary judgment motion relies.

17    See Hambleton Bros. Lumber Co. v. Balkan Enterprises, Inc., 397 F.3d 1217, 1225 (9th

18    Cir. 2005) (finding no abuse of discretion where district court struck changes to

19    deposition made after defendant moved for summary judgment; noting "Rule 30(e) . . . is

20    to be used for corrective, and not contradictory, changes"); Kennedy v. Allied Mut. Ins.

21    Co., 952 F.2d 262, 266 (9th Cir. 1991) (holding "general rule in the Ninth Circuit is that a

22    party cannot create an issue of fact by an affidavit contradicting his prior deposition

23    testimony").  As set forth below, however, even if the challenged changes are

24    disregarded, a triable issue of fact as to accrual remains.

25          As noted, defendants contend Beasley "is held to behave as he would expect

26    another consumer to behave," which, according to defendants, is to "review the

27    ingredient list."  (See Mot. at 10:23-24.)  As the Ninth Circuit has observed, however,

28    "reasonable consumers expect that the ingredient list [on packaged food items] contains

United States District Court
Northern District of California

1  more detailed information about the product that <u>confirms</u> other representations on the

2  packaging." <u>See</u> <u>Williams v. Gerber Products Co.</u>, 552 F.3d 934, 939-40 (9th Cir. 2008)

3  (emphasis added).  Defendants cite to no authority suggesting to the contrary.[3]

4          Here, there is no dispute that the phrase "0g Trans Fat" was placed on Coffee-

5  mate packaging (<u>see</u> Doc. 77-2 at Exs. 3, 6)[4] and that, on each Coffee-mate product, the

6  Nutrition Facts panel above the ingredient list contains the phrase "Trans Fat/Grasa

7  Trans 0g" (<u>see</u> <u>id.</u> at Exs. 3-8).  Although, in any given case, a plaintiff may possess

8  information to alter the above-noted general expectation and, as a matter of law, put such

9  plaintiff on inquiry notice, in this case, even given his knowledge about the relationship

10  between PHO and trans fat, the Court finds a triable issue of fact exists as to whether

11  Beasley, faced with multiple clear statements about the absence of trans fat in Coffee-

12  mate, should have investigated the ingredient list.  <u>See</u> <u>O'Connor v. Boeing North</u>

13  <u>American, Inc.</u>, 311 F.3d 1139, 1150 (9th Cir. 2002) (holding "[w]hen the evidence yields

14  conflicting inferences, summary judgment is improper").

**CONCLUSION**

16          For the reasons stated above, defendants' motion for summary judgment is hereby

17  DENIED.

18          **IT IS SO ORDERED.**

19  Dated: June 12, 2020

20                                                          MAXINE M. CHESNEY
                                                            United States District Judge

---

[3] The cases on which defendants rely, namely, <u>Ries v. Arizona Beverages USA LLC</u>, 287 F.R.D. 523 (N.D. Cal. 2012) and <u>Allen v. Similasan Corp.</u>, 96 F. Supp. 3d 1063 (S.D. Cal. 2015), are distinguishable on their facts.  <u>See</u> <u>Ries</u>, 287 F..R.D. at 527 (holding plaintiff on inquiry notice where she testified she read ingredient list); <u>Allen</u>, 96 F. Supp. 3d at 1071 (holding plaintiff on inquiry notice as to "[p]roducts' alleged ineffectiveness after using them several times with no result").

[4] In his opposition to defendants' motion, Beasley requests the Court sua sponte enter summary judgment against defendants as to whether "0g Trans Fat" is an unlawful nutrient content claim.  As noted above, however, the Court previously denied Beasley leave to file a cross-motion for judgment on this very issue, and, accordingly, his request is denied.